# CASE

IN THE

# SUPREME JUDICIAL COURT

IN THE

COUNTY OF HANCOCK, JUNE TERM, 1835.

---

## The Inhabitants of BUCKSPORT vs. SPOFFORD.

It was not necessary that the selectmens' warrant for calling a town meeting in 1803, should be *under seal.*

The original warrant might be used in evidence though it had never been recorded.

The constable's return on the warrant, was dated the day only before the meeting was holden, and did not set forth *the manner* in which he had notified the inhabitants. Held, that the validity of the meeting was not thereby affected.

Where a committee of gentlemen claiming to be authorised by the inhabitants of a town, invited a gentleman to become the minister of that town, which invitation he accepted, was settled according to ecclesiastical usage, and continued to officiate in that office for more than thirty years, the town all the time paying the stipulated salary, it was holden, that the town had waived its right, if any ever existed, to set up objections to the legality of the meeting, at which the invitation aforesaid was authorised.

The *fee* of lands in a town reserved for parsonage or ministerial lands, vests in the minister of the town when one is settled, and the tenure cannot be changed by a vote of the town, even though the minister assent thereto. And whatever rights the town may acquire in relation to the use or enjoyment of the profits, must be under him and in subordination to his legal title.

THIS was a writ of entry, in which the plaintiffs demanded certain parcels of land in *Bucksport,* being parts of the parsonage in said town, counting on their own seizin within twenty years, and a disseizin by the tenant.

The demandants proved the original designation of the lot by the proprietors, as the parsonage lot; and a formal entry upon the same, before bringing the action.

The defence set up was, that these lands had been sold to the tenant by a committee appointed for that purpose by the town, acting in its parochial capacity, with the assent of the *Rev. Mr. Blood.* It appeared that this gentleman was regularly settled as the first minister of *Bucksport,* in the year 1803, if the objections to the record evidence of his settlement, (which are sufficiently stated in the opinion of the Court,) were properly overruled, and that he had ever since continued in that office.

At a town meeting, held *Jan.* 31, 1803, it was voted, " that in " consequence of *Mr. Mighill Blood's* answer to the town com- " mittee, who were authorised in their name to give him a call " to settle with them as their minister, that he have in addition to " a salary of $300 per annum, the use and improvement of the " *one half part* of the three hundred acre lot, called the Parson- " age lot, in said town." *Mr. Blood* knew of the passage of this vote, and assented to it.

Upon the whole evidence, for the purpose of bringing all the questions of law raised in the case before the Court, the Chief Justice instructed the jury to find for the tenant, which they did ; the parties agreeing, that if in the opinion of the Court the de- mandants were entitled by law to maintain this action, the verdict should be set aside and a new trial granted.

*Rogers,* for the demandants.

The statute of *Maine, ch.* 254, passed 1824, vested the fee and estate in lands reserved for the use of the ministry, or par- sonage lands, *in the town,* where the fee had not *already* vested in some particular *parish* or *individual.* Had the fee become so vested prior to the passage of this act ? It is contended that the fee in no case can become vested in a parish. If there be a min- ister, the fee simple is in him, and his successors ; and if there be no minister the fee is in abeyance. *Weston* v. *Hunt,* 2 *Mass.* 500 ; *Brown* v. *Porter,* 10 *Mass.* 93. Nor had it become vest- ed in any individual. None could take but a legally settled min- ister, and it is contended that there is no legally settled minister in the town of *Bucksport.*

1. There is no sufficient evidence of a warrant having issued for calling a meeting. This should be proved by the record.

*Thayer* v. *Stearns & als.* 1 *Pick.* 109; *Inhabitants of first Parish in Sutton* v. *Cole*, 3 *Pick.* 232.

2. The service of the warrant was not sufficient in regard to time — and in its not appearing in what manner he had served the notice. *Tuttle* v. *Cary*, 7 *Greenl.* 426.

But if *Mr. Blood* was legally settled, he is estopped by the terms of the settlement to claim more than one half of these lands. And the parish is estopped in like manner. *Brown* v. *Porter*, before cited.

*Abbott* and *Pond*, for the defendant, cited the following authorities: *Rice* v. *Osgood*, 9 *Mass.* 44; *Parsonsfield* v. *Dalton*, 5 *Greenl.* 221; *Town of Pawlet* v. *Clark*, 9 *Cranch*, 292; *Shapleigh* v. *Pilsbury*, 1 *Greenl.* 271; *Weston* v. *Hunt*, 2 *Mass.* 500; *Proprs. Ken. Pur.* v. *Laboree*, 2 *Greenl.* 275; *Lewis* v. *Webb*, 3 *Greenl.* 326; *Dartmouth College* v. *Woodward*, 4 *Wheaton*, 518; *Const. of Maine*, art. 1, sec. 21; *Richardson* v. *Brown*, 6 *Greenl.* 355; *Fletcher* v. *Peck*, 6 *Cranch*, 87; *Colman* v. *Anderson*, 10 *Mass.* 113; *Maine Stat.* ch. 114, sec. 1; *Thayer* v. *Stearns*, 1 *Pick.* 112; *Ford* v. *Clough*, 8 *Greenl.* 344; *Bangs* v. *Snow*, 1 *Mass.* 181; *Waldron* v. *Lee*, 5 *Pick.* 329.

Weston C. J. — The validity of the settlement of the *Rev. Mr. Blood*, as the minister of *Bucksport*, is controverted on several grounds. First, that the warrant calling the town meeting, at which it was voted to invite *Mr. Blood* to become their minister, was not under seal. But the statute, under which that meeting was called, did not require that the warrant should be under seal; and it was accordingly held not to be essential in *Colman* v. *Anderson*, 10 *Mass.* 105. Secondly, that the warrant does not appear to have been recorded, and that it can be proved only by the record. The fact to be made out is, that the meeting was holden, in pursuance of a regular and lawful warrant. The original in the custody of the town clerk, having all the legal requisites, is produced. It is in its nature the best evidence of the fact. Its validity is not made by law to depend on its being recorded. If such a duty had been prescribed, it would

have been of a directory character, and not a condition precedent to the exercise of the powers, given by the warrant. As that is a paper which may be lost or destroyed by time and accident, there is great convenience in having it recorded, and it may be among the implied duties of the town clerk. And the record when made, or a copy of it duly attested, is evidence of the existence and contents of the warrant; but certainly not of a higher character than the warrant itself, which is the original and primary evidence. It would be extraordinary if an objection of this kind on the part of the demandants could be sustained, founded on the assumed delinquency of their town clerk in not recording the warrant. In *Thayer* v. *Stearns et al.* 1 *Pick.* 109, cited in the argument, in which the defendants justified as assessors of the town of *Milford,* the question was, whether a defect in the return of the constable on the warrant for the meeting, at which they were chosen, supposed to be fatal, could be supplied by parol testimony. The court held the return as it stood sufficient for the purposes of the defence, but had it been otherwise, intimated an opinion that the defendants were bound to show themselves to have been duly chosen by the records, that is, as must, we think, be understood, without the aid of parol testimony, the legal admission of which was the point raised at the trial. That kind of proof was held inadmissible, and it was contrasted for illustration with record proof. It cannot fairly be deduced from it, that the original warrant itself was not evidence of its existence and contents. That the court could not have taken any distinction between the warrant and the record of it, holding the latter competent, and the former incompetent evidence, may be seen by adverting to the case of *Saxton* v. *Nimms et al.* 14 *Mass.* 315, upon which they based that part of their opinion. There the question was, whether the return on the warrant, that full seven days warning of a school district meeting had been given, might be contradicted by the testimony of some of the inhabitants, that they had less than seven days notice. The court held that such testimony could not legally be received.

The date of the constable's return was the day previous to the meeting. This constitutes no objection, as was decided in *Thay-*

*er* v. *Stearns,* before cited, and in *Ford* v. *Clough et al.* 8 *Greenl.* 334.

It is further insisted that the meeting was illegal, inasmuch as the constable has not returned in what manner he notified the inhabitants, and *Tuttle* v. *Cary,* 7 *Greenl.* 426, is much relied on as an authority in point. In that case the defendant, who had acted as moderator of a meeting, was called upon to answer in damages, for an alleged violation of official duty. It was a case calling for strict proof of all essential averments, on the part of the plaintiff. It was incumbent on him to show that his vote had been refused at a legal meeting. For the purpose of upholding proceedings, *ut res magis valeat, quam pereat,* many deficiencies, not inconsistent with what does appear, are supplied by presumption and intendment of law. A construction thus liberal and enlarged has been applied in aid of the proceedings of *quasi* corporations, created for public purposes, and of ancient proprieties. In the former, persons little skilled in business are, from the necessity of the case, frequently called upon to act officially. Under such circumstances, their acts and doings are to be viewed with an indulgent eye, and such has been the uniform practice of the courts. The case of *Tuttle* v. *Cary* is of another character, not within the reason, upon which this practice is founded. It has more analogy to a suit for a penalty or forfeiture. This court there decided that the legality of the meeting did not appear by competent proof. And whatever may have been the general reasoning of the learned Judge, who pronounced the opinion of the court, the decision has reference to the case then under consideration. But admitting the points there decided to be of general application, it is distinguishable from the case before us. There, the manner of warning was prescribed by the Parish act. Here, it is not prescribed, but depends upon the vote or agreement of the town. The town proceeded to act under the warrant in question, as returned. They were satisfied with it, and it may well be presumed to have been served in the manner agreed upon. The case of *Ford* v. *Clough et al.* before referred to, recognises and sustains these distinctions.

A committee of gentlemen, claiming to be authorized by the inhabitants of the town of *Bucksport,* invite the *Rev. Mr. Blood*

to become their minister. He accepts. their invitation, is settled according to ecclesiastical usage, and enters upon the duties of his office. He continues to serve them for thirty years, the prime of his days. They acquiesce during all that period, enjoy the benefit of his labors, and pay the stipulated salary. If there was any irregularity in warning the first meeting, it is not imputable to him, nor does he appear to have been apprized of it. If it had been competent for them, at an earlier period, to have set up these objections, which is not admitted, it is not too much to hold that they have by their long acquiescence, waived them, and ratified and confirmed the acts of their officers and agents.

If then, *Mr. Blood* became in 1803, and has since continued, the settled minister of the town of *Bucksport*, have the demandants proved their seizin in the land in controversy, as alleged? The leading cases of *Weston* v. *Hunt*, and of *Brown* v. *Porter*, cited in the argument, establish the doctrine, that if there be a minister, the fee of parsonage or ministerial lands is in him, and that during a vacancy, it is in abeyance. This was the general law; the tenure by which these lands were holden. That tenure may be changed by alienation, which may be made effectual by the minister, with the assent of his town or parish. If the condition prescribed by the town at the adjourned meeting, in regard to the ministerial lot, to which *Mr. Blood* is found to have assented, was binding and operative, it did not vest the fee of any part of it in the town. There was no alienation of the land, by any of the forms authorized by law. The whole must therefore have vested in *Mr. Blood*, in right of his town or parish, or a part remained in abeyance. That is a state of things, which all the ancient jurists agree, the law abhors. This arose partly from feudal reasons, which have ceased to exist, but principally because it is unpropitious to proper care and vigilance in the preservation of property of this description, and to productive labor and improvement. It would be to lock up the land from its destination and appropriate use.

Whether after the acceptance of their invitation by *Mr. Blood*, without conditions, it was competent for the town to impose them; or whether if so, it must not have been in pursuance of an article in the warrant calling the meeting, are questions, which

the case does not require us to decide. *Mr. Blood,* doubtless, considered their understanding binding upon him in a moral, if not in a legal point of view ; and the case finds that he has accordingly assented to the disposition of this part of the lot on the part of the town. But whatever may have been the legal character of that agreement or understanding, we are of opinion that by law, the fee of the whole lot, did, and must vest in *Mr. Blood,* as the settled minister of that town. It did not remain in abeyance. It vested in him, as much as the inheritance does in the heir, upon the death of the ancestor. This course of things, depending on the general law, could not be changed by a vote of the town. He might, in pursuance of the agreement, hold a portion of it in trust for the town, under an obligation to permit them to enjoy the profits, or to convey to their appointee, but the legal title would remain in him, in right of the town. Whatever rights the town had under their vote with his assent, would be under him, and in subordination to his legal title. This view of the case is sustained by the opinion of the court in *Brown* v. *Porter.*

If the land vested in *Mr. Blood,* and we are of opinion that it did, although it may have been subject to trusts, prior to the act of 1824, *c.* 254, that statute did not operate upon the land in controversy, and the demandants have failed to prove their seizin, as alleged.

*Judgment on the verdict.*